UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                        :

LOURDES BETANCOURT,                       :
                                Plaintiff,    :
                                                        :          10 Civ. 3789 (JPO)
                -against-                        :
                                                        :          MEMORANDUM AND
THE CITY OF NEW YORK et al.,        :               ORDER
                              Defendants.  :
                                                        :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

      Plaintiff Lourdes Betancourt filed this action pursuant to 42 U.S.C. § 1983 on May 7, 2010. (Complaint, Dkt. No. 1 ("Compl.")). She alleges that the defendants demolished a building that she owned in violation of her federal constitutional rights. Before the Court are three motions for summary judgment: one filed by defendant Gateway Demolition Corporation ("Gateway") (Dkt. No. 21); a second (Dkt. No. 24), also filed by Gateway, duplicative of the first; and a third filed by defendants the City of New York, New York City Department of Buildings, New York City Department of Housing Preservation and Development, Douglas Boyd (in his official and individual capacities), and Kwok Leung (in his official and individual capacities) (together, the "City Defendants") (Dkt. No. 27). Gateway and the City Defendants are together referred to as the "Defendants." For the reasons discussed below, Defendants' motions are granted.

**I.**     **Background**

      Plaintiff Lourdes Betancourt owned a three-story residential building located at 45 Wadsworth Avenue in the County, City, and State of New York. The building was significantly damaged in a fire on May 13, 2008. On the night of the fire, a Department of Buildings

("DOB") inspector issued a Commissioner's Order instructing the property owner to "[m]ake area safe, seal bldg / secure bldg." (Commissioner's Order, Control No. 219804, appended as Ex. F to Declaration of Louise Lippin, Dkt. No. 35 ("Lippin Decl.").)

The following day, Defendant DOB professional engineer Kwok Leung and Defendant DOB inspector Douglas Boyd visited the property. Leung prepared a Building Structural Stability Inspection Report, finding that "almost 90% of [the building's] structure [was] burned and damaged." (Building Structural Stability Inspection Report, Inspection Date May 14, 2008, appended as Ex. G to Lippin Decl., at 1.) The report concluded, "The existing condition of this house is in a structural unstable condition [*sic*], and this unsafe condition is getting worse as the time is getting longer. I recommend a demolition for this house as soon as possible." (*Id.* at 2.) The next day, May 15, 2008, DOB officials signed and approved an Emergency Declaration Form recommending that Plaintiff's building be "[d]emolish[ed] forthwith." (Emergency Declaration Form dated May 15, 2008, appended as Ex. H to Lippin Decl.) DOB sent a letter, dated May 15, 2008, notifying Plaintiff of the Emergency Declaration. (Immediate Emergency Declaration Letter, appended as Ex. J to Lippin Decl.)

Officials of the New York City Department of Housing Preservation and Development ("HPD") solicited bids from five pre-approved contractors for the building's demolition. Two contractors submitted bids, and both visited the property on May 16, 2008. Defendant Gateway submitted the lower bid and was awarded the contract. HPD issued Gateway a Notice to Proceed on "**IMMEDIATE EMERGENCY DEMOLITION WORK**" which is dated May 16, 2008. (Notice to Proceed dated May 16, 2008, appended as Ex. N to Lippin Decl.) Gateway began the demolition on May 16, 2008. (HPD Inspector's Report, appended as Ex. O to Lippin Decl.) Gateway's contract award was memorialized in an HPD form signed on May 20, 2012.

(Determination of Award, OMO No. D800627, appended as Ex. M to Lippin Decl.)  HDP officials approved Gateway's charges of $58,869 for the demolition.  This amount was charged to Plaintiff, who paid it in full.

Plaintiff then filed this lawsuit.  When Defendants noticed Plaintiff's deposition, Plaintiff's counsel produced Plaintiff's husband, Jose Betancourt, asserting that he had knowledge of the events alleged and was managing the property at the relevant times.  In Mr. Betancourt's deposition, he was asked whether "there was any question that the building needed to be demolished," and he answered, "The building needed to be demolished.  I was waiting to get whatever information to get an engineer and get a permit to demolish it."  (Transcript of Jose Betancourt dated October 31, 2011 ("Betancourt Tr.") at 41:22-42:4, appended as Ex T to Lippin Decl.)  He testified that he believed he could have accomplished the demolition for $20,000 (*id.* at 22:18-23:9), though he believed it would have taken "[a]t least a week, five days," to get a permit for the demolition (*id.* at 34:15-23).

## II.   Legal Standard for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks and citation omitted).  "A fact is 'material' when it might affect the outcome of the suit under governing law," and "[a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citation

omitted). When determining whether a genuine dispute of material fact exists, a court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010).

**III.  Discussion**

    **A.  Procedural Due Process**

Plaintiff argues that Defendants' demolition of her building violated her right to procedural due process. The Fourteenth Amendment forbids states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Though this provision generally entitles one to predeprivation notice and an opportunity to be heard, in "an emergency requiring quick action and where meaningful pre-deprivation process would be impractical, the government is relieved of its usual obligation to provide a hearing, as long as there is an adequate procedure in place to assess the propriety of the deprivation afterwards." *WWBITV, Inc. v. Village of Rouses Point*, 589 F.3d 46, 50 (2d Cir. 2009) (citation omitted). If there is such a postdeprivation process for redress, "the due process guarantee is offended only when an emergency procedure is invoked in an abusive and arbitrary manner; therefore, there is no constitutional violation unless the decision to invoke the emergency procedure amounts to an abuse of the constitutionally afforded discretion." *Catanzaro v. City of Middletown*, 188 F.3d 56, 62 (2d Cir. 1999) (citation omitted).

In *Catanzaro*, the Second Circuit dealt with a challenge to a municipality's determination that an emergency required immediate demolition of private structures. The court explained that

> where there is competent evidence allowing the official to reasonably believe that an emergency does in fact exist, or that affording predeprivation process would be otherwise impractical, the discretionary invocation of an emergency procedure

>  results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion.
>  
>  This somewhat deferential standard finds strong support in policy considerations. The law should not discourage officials from taking prompt action to insure the public safety. By subjecting a decision to invoke an emergency procedure to an exacting hindsight analysis, where every mistake, even if made in good faith, becomes a constitutional violation, we encourage delay and thereby potentially increase the public's exposure to dangerous conditions. This quandary is exactly what these emergency procedures are designed to prevent, and is the primary reason they are constitutionally acceptable.

*Id.* at 63.

Here, DOB Operations Policy and Procedure Notice # 16/93 establishes DOB's emergency procedures for unsafe buildings. (*See* DOB Operations Policy and Procedure Notice # 16/93 ("OPPN 16/93"), appended as Ex. E to Lippin Decl.) Under OPPN 16/93, after an emergency has been declared, "[t]he expectation is that work on the structure will begin by the day after the declaration." (*Id.* at 1.) Accordingly, a DOB immediate emergency declaration "contemplate[s] demolition within twenty-four hours and thus, as a practical matter, probably without any advance notice to the owner." *Watanabe Realty Corp. v. City of New York*, 315 F. Supp. 2d 375, 390 (S.D.N.Y. 2003).

Plaintiff does not argue that OPPN 16/93 or any other state law is unconstitutional or otherwise invalid. Nor does Plaintiff argue that Defendants violated any of these laws. Rather, the thrust of Plaintiff's argument is that she could have accomplished the demolition less expensively if given a week to do so—significantly longer than contemplated by DOB's emergency protocols. Defendants assert that Plaintiff had an adequate procedure through which to seek redress of any grievances: an action in state court. And indeed, to the extent that Plaintiff seeks damages for unnecessary demolition expenses, the appropriate postdeprivation procedure for redress was a state-court action; Plaintiff does not argue otherwise. Thus, DOB's demolition

of Plaintiff's building was only a violation of her constitutional rights if DOB's invocation of its emergency procedures was arbitrary or abusive of DOB's discretion.

Plaintiff argues that the demolition was arbitrary because Plaintiff was "misled" by initial instructions from DOB to "[m]ake area safe, seal bldg / secure bldg" (Pl.'s Br., Dkt. No. 38, ¶ 4; Commissioner's Order) and by similar initial instructions from the New York City Fire Department. But the fact that those instructions preceded DOB's emergency declaration and order of demolition is no evidence of arbitrariness or abuse of discretion. Indeed, Plaintiff agreed with DOB that "[t]he building needed to be demolished." (Betancourt Tr. at 41:25-42:2.) Plaintiff's assertion that DOB's earlier instructions were misleading is insufficient to create a genuine issue of material fact as to the arbitrariness of Defendants' emergency declaration.

Plaintiff also argues that the demolition was arbitrary and abusive because Gateway's demolition work began the day before the company received notice to proceed. For this assertion, Plaintiff cites her complaint. (Pl.'s Br. ¶ 5.) She cites no evidence. All of the adduced evidence shows that DOB officials authorized Gateway to proceed with the demolition on May 16, 2008 and that Gateway did so on that date. As shown by the adduced evidence, there is no genuine issue of material fact as to whether Gateway began the demolition before it was authorized to do so.

Thus, there is no genuine issue of material fact as to whether Defendants' invocation of emergency procedures was arbitrary or abusive of their discretion, and Defendants are entitled to judgment as a matter of law on this point.

    **B.**     **Substantive Due Process**

Plaintiff also argues that Defendants' demolition of her building violated her substantive due process rights. To prevail on a substantive due process claim, a plaintiff "must show that the

government action was 'arbitrary, conscience-shocking, or oppressive in a constitutional sense,' and not merely 'incorrect or ill-advised.'" *Catanzaro*, 188 F.3d at 64 (quoting *Kaluczky v. White Plains*, 57 F.3d 202, 211 (2d Cir. 1995)).  As in another case addressing the very emergency procedures at issue here,

> [t]here is nothing to suggest that the City did anything more than order the demolition of the Building . . . in order to protect the public safety.  Absent some evidence of a culpable state of mind on the part of the City, which Plaintiffs do not provide . . . , no reasonable trier of fact could find this demolition to be arbitrary, conscience-shocking or otherwise constitutionally oppressive.

*Kshel Realty Corp. v. City of New York*, 2006 U.S. Dist. LEXIS 62220, at *34 (S.D.N.Y. Aug. 30, 2006), *aff'd*, 293 F. App'x 13 (2d Cir. 2008).  The evidence adduced in this case shows that Defendants' actions were not arbitrary, conscience-shocking, or otherwise constitutionally oppressive.  These are not the sort of facts that would lead a court to find that "a more flagrant, unwarranted, and oppressive violation and trampling upon the rights of the public was never presented."  *Yazoo & Miss. Valley R.R. Co. v. Sanders*, 87 Miss. 607, 609 (1905) (Truly, J.).  Because there is no genuine issue of material fact as to whether Defendants' actions were arbitrary, conscience-shocking, or oppressive in a constitutional sense, Defendants are entitled to summary judgment as a matter of law.

## IV. Conclusion

For the foregoing reasons, Defendants' motions for summary judgment are GRANTED.

The Clerk of Court is directed to close the motions at docket entry numbers 21, 24, and 27 and to terminate this case.

SO ORDERED.

Dated: New York, New York
August 22, 2012

_____
J. PAUL OETKEN
United States District Judge